United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES VERDUCCI,

          Plaintiff,

    v.

TEAMSTERS BENEFIT TRUST,

          Defendant.

Case No.  12-cv-03189-JST

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 41

Before the Court is the motion for summary judgment filed by Defendant Teamsters Benefit Trust ("the Trust").  ECF No. 41.  The Court will grant the motion.

**I.**       **BACKGROUND**

Plaintiff James Edward Verducci filed this action *pro se* on June 19, 2012, against Defendant Teamsters Benefit Trust, challenging Defendant's denial of retiree health benefits. Compl., ECF No. 1.

The Complaint alleges that Verducci was a Teamsters Union worker for thirty years. Compl. pp. 3–4.  From 1999 to 2003, Verducci was on total temporary disability due to several surgeries.  Compl. p. 4.  His doctor was waiting for approval to perform a surgery on Verducci's left wrist, after which Verducci planned to return to work until he reached retirement age.  Id. However, Verducci's employer's "insurance doctor" reviewed the request and "overruled" Verducci's doctor, deeming Verducci "permanent and stationary" and finding that he could not return to work.  Id.  In mid-2003, Verducci's disability benefits were terminated, forcing him to refinance his house and pay for COBRA self-pay insurance until the coverage period expired.  Id. Verducci has not had health insurance since then.  He alleges that Michael Keleen, Secretary Treasurer of Teamsters Local 921 told him he would get his medical insurance back when he was

1    fifty-five years old and started collecting his Teamsters pension.  Id.

2            The Trust answered on August 18, 2012, ECF No. 12, and designated the administrative

3    record on January 25, 2013, ECF No. 35 ("A.R.").  Defendant Teamsters Benefit Trust is a

4    collectively bargained multi-employer health and welfare trust fund.  See, e.g., A.R. p. 27.  The

5    Trust is governed by an Agreement and Declaration of Trust ("Trust Agreement"), which reserves

6    to the Board of Trustees the "exclusive right, power and authority, in its sole and absolute

7    discretion, to administer, apply and interpret this Agreement, the Plans, and any other Plan or

8    Trust documents and to decide all the matters arising in connection with the operation or

9    administration of the Plans or the Trust and the investment of Trust assets."  A.R. p. 124, Trust

10   Agr. § 5.3(a).  That authority expressly extends to "all decisions with respect to the eligibility for,

11   and the amount of, the benefits payable under the Plans to plan participants."  Trust Agr.

12   § 5.3(b)(1).  The Agreement also states that the Trustees "shall be deemed to have properly

13   exercised their authority as described herein unless they have abused their discretion by acting

14   arbitrarily and capriciously."  Trust Agr. § 5.3(d).

15           The "Retirement Security Plan" ("RSP") at issue is administered by the Trust's Board of

16   Trustees.  See, e.g., A.R. p. 69.  The RSP provides medical benefits to eligible retirees and their

17   spouses.  Id.  Verducci first applied for benefits by letter dated June 21, 2010, in which he stated

18   that he worked for the San Francisco Chronicle from 1981 to March 1999.  A.R. p. 15.  Because of

19   severe wrist pain and back pain, he took leave on "temporary disability."  He also stated that he

20   had been collecting pension benefits through the Western Conference of Teamsters as of

21   approximately January 2008.  Id.  At that time, Verducci stated that he was fifty-seven years old.

22   Id.

23           Trust Fund Manager Nora Johnson denied Verducci's application for benefits by letter

24   dated July 7, 2010.  A.R. p. 13.  In it, she states that Verducci is ineligible for coverage because

25   (1) he did not qualify for a pension when he left active employment in May 2003 because his

26   effective retirement date was April 2008, (2) he was not covered in a Trust-participating plan for

27   twenty-four of the thirty-six months preceding his retirement date, and (3) he failed to submit an

28   application within twelve months from when he first became eligible for retiree benefits.  Id.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    Verducci appealed to the Trust's Board of Trustees by letter dated August 5, 2010.  A.R. p.

2  11.  He was denied for the same reasons by letter dated November 9, 2010.  A.R. pp. 1–10.  The

3  plan administrator's synopsis sent to the Board stated that Verducci had active Trust coverage

4  from February 2001 through July 2004, including a period of COBRA coverage extending from

5  June 2003 through July 2004.  A.R. p. 8.  The administrator found that Verducci "did not qualify

6  for a pension when he withdrew from active employment.  He withdrew 7-04 and his pension date

7  was not effective until 4-08."  Id.

8    The plan denied benefits pursuant to RSP Rules of Eligibility Two, Three, and Five.  Rule

9  Two[1] requires that Verducci be "a pensioner with the Western Conference of Teamsters Pension

10  Plan (or another plan approved by TBT) or a recipient of Social Security disability benefits."  A.R.

11  p. 147.  Rule Three requires that Verducci have been covered under a Trust-participating plan for

12  at least twenty-four of the thirty-six months preceding his retirement date.  Id.  Finally, Rule Five

13  requires that Verducci have applied for RSP benefits within twelve months from when he first

14  became eligible for benefits.  The RSP Summary Plan Description states: "If you do not enroll

15  within this 12-month period, except as noted under the *Exceptions* below and on page 3, you are

16  not permitted to enroll at a future date."  See, e.g., A.R. pp. 3, 28, 85, 147.  The exceptions to the

17  twelve-month include the following: "If you retire due to disability, a gap in coverage will be

18  waived as long as you apply for coverage in a timely manner after you receive notice of

19  entitlement from Social Security or the Western Conference of Teamsters Pension Plan (or another

20  TBT-approved plan)."  See, e.g., A.R. p. 147.

21    Verducci has consistently stated that he assumed his retiree medical benefits would begin

22  when his pension benefits began, in 2008.  See, e.g., A.R. pp. 11, 15; Compl. p. 4.  He also

23  claimed, in appealing the initial denial of benefits, that he did not receive a copy of the RSP upon

24  termination of his disability benefits (though he does not claim that he ever requested any

25  documents pertaining to the plan).  A.R. p. 11.

26

27    [1] The Court quotes here the RSP Summary of Plan Description revised January 2008, A.R. p. 141,
    which is the most recent version the Trust designated for the record, even though, as the Court
28  discusses below, a more recent version than the one submitted applies to this case.

## II.    LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). The Court must draw all reasonable inferences in the light most favorable to the non-moving party.  Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010). However, unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment.  Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

When the moving party does not bear the ultimate burden of persuasion at trial, it must satisfy both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990)).  If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact.  Id. at 1102–03.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Affidavits and declarations "must be made on personal knowledge, set out facts that

4

1  would be admissible in evidence, and show that the affiant or declarant is competent to testify on

2  the matters stated." Fed. R. Civ. P. 56(c)(4).

3  **III.    ANALYSIS**

4        Plaintiff's complaint challenges the denial of RSP benefits, which are governed by the

5  Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). "ERISA was

6  enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans,'

7  and 'to protect contractually defined benefits.'" Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

8  101, 113 (1989) (internal citations omitted). ERISA "permits a person denied benefits under an

9  employee benefit plan to challenge that denial in federal court." Metropolitan Life Ins. Co. v.

10 Glenn, 554 U.S. 105, 108 (2008). "ERISA's civil-enforcement provision . . . allows a claimant 'to

11 recover benefits due to him under the terms of his plan [and] to enforce his rights under the terms

12 of the plan.'" Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010) (quoting

13 29 U.S.C. § 1132(a)(1)(B)).

14       **A.    Standard of Review**

15       An ERISA suit pursuant to 29 U.S.C. § 11329(a)(1)(B) challenging denial of benefits is

16 subject to a *de novo* standard of review unless the benefit plan "gives the administrator or

17 fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the

18 plan." Firestone, 489 U.S. at 115.

19       ERISA's "statutory scheme . . . 'is built around reliance on the face of written plan

20 documents.'" U.S. Airways, Inc. v. McCutchen, --- U.S. ----, 133 S. Ct. 1537, 1548 (2013)

21 (quoting Curtiss–Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995)). "Courts construe

22 ERISA plans, as they do other contracts," with reference to "ordinary principles of contract

23 interpretation." U.S. Airways, 133 S. Ct. at 1548–49. The Summary Plan Description "shall be

24 written in a manner calculated to be understood by the average plan participant, and shall be

25 sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries

26 of their rights and obligations under the plan." 29 U.S.C. § 1022. "[A]mbiguities are construed in

27 favor of the insured." Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999).

28       The burden lies with the plan administrator to demonstrate that deferential review is

United States District Court
Northern District of California

5

1   appropriate.  Id. at 1089 ("[T]the default is that the administrator has no discretion, and the

2   administrator has to show that the plan gives it discretionary authority in order to get any judicial

3   deference to its decision.").  If the administrator satisfies that burden, the Court's review is for

4   abuse of discretion.  In that instance, the Court will not overturn the ERISA plan's decision unless

5   it is "arbitrary and capricious," meaning "the administrator's decision cannot be disturbed if it is

6   reasonable."  Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 675 (9th Cir. 2011).

7          Regardless of the plan administrator's showing, the Court's review of a benefits decision

8   must be "tempered by skepticism" when the plan administrator has a conflict of interest.  Harlick

9   v. Blue Shield, 686 F.3d 699, 707 (9th Cir. 2012), cert. denied, 133 S. Ct. 1492 (2013).  A conflict

10  of interest always arises where the entity making coverage decisions also pays for the benefits.

11         Finally, the Court's review is limited to the administrative record unless "circumstances

12  clearly establish that additional evidence is necessary to conduct an adequate de novo review."

13  Kearney, 175 F.3d at 1090 (quoting Mongeluzo v. Baxter Travenol Long Term Disability Ben.

14  Plan, 46 F.3d 938, 944 (9th Cir. 1995)).

15         Here, the Trust Agreement expressly reserves for the Trust the discretionary authority to

16  interpret the terms of the RSP plan and establishes abuse of discretion as the appropriate standard

17  of review.  A.R. p. 124, Trust Agr. § 5.3.  Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.,

18  293 F.3d 1139, 1142 (9th Cir. 2002) (applying abuse of discretion standard where "plan language

19  unambiguously gives the Committee broad discretion to determine eligibility benefits").

20         Though Plaintiff has not argued that the Trust has a conflict of interest requiring the Court

21  to approach the plan's denial of benefits "skeptically," the Court notes that the conflict of interest

22  must inform the Court's analysis regarding whether the plan abused its discretion because the plan

23  is administered and funded by the Trust.  See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115

24  (2008); Oster v. Standard Ins. Co., 759 F. Supp. 2d 1172, 1185 (N.D. Cal. 2011) (citing Abatie,

25  458 F.3d at 968–69).

26      **B.     Plaintiff Has Failed To Show That The Trust Abused Its Discretion In
                Denying Benefits**

27

28  ERISA plan administrators must act solely "in accordance with the documents and

United States District Court
Northern District of California

1    instruments governing the plan," including the Summary Plan Description ("SPD").  29 U.S.C. §

2    1104(a)(1)(D).  See Bergt, 293 F.3d at 1143.  "[T]he SPD is the 'statutorily established means of

3    informing participants of the terms of the plan and its benefits' and the employee's primary source

4    of information regarding employment benefits."  Id. (quoting  Pisciotta v. Teledyne Indus., 91

5    F.3d 1326, 1329 (9th Cir. 1996)).

6            Though the Court applies the abuse of discretion standard of review to the plan's denial of

7    benefits, the Court must review whether plan terms are ambiguous de novo.  Bergt, 293 F.3d at

8    1143–45 (interpreting SPD and master plan document; holding interpretation of ambiguous and

9    conflicting plan terms that was most favorable to participant was controlling); Patterson v. Hughes

10   Aircraft Co., 11 F.3d 948, 950 (9th Cir. 1993).  Ambiguities must be resolved in favor of the plan

11   participant.  Kearney, 175 F.3d at 1090; Patterson, 11 F.3d at 950.

12           Although the Trust cites to, attaches, and discusses several iterations of the plan summary

13   documents it has issued over the past ten years, the relevant plan for purposes of this case is the

14   one in effect when Plaintiff's cause of action accrued, and "[a] participant's cause of action

15   accrues on the date the claim is denied,"  Marin v. Xerox Corp., No. 12-cv-06532- RS, 2013 WL

16   1305737, at *1 (N.D. Cal. Mar. 11, 2013), which in this case is July 7, 2010.  The most recent plan

17   summary the Trust submitted is the "Guide to Your Benefits" revised in January 2008.[2]  A.R. p.

18   141 ("Guide rev. 1-08").  The other summaries the Trust submitted were revised in July 2003,

19   September 2003, and June 2007.  The Board of Trustees' internal Appeals Committee meeting

20   documents refer to October 2003, April 2004, and October 2004 versions as well.  A.R. p. 8.  To

21   make matters more complicated, it appears the Trust may have sent a different version of the

22   Guide or SPD to Verducci when it denied him benefits in 2010 than it has submitted here; whether

23   it is an earlier or later version, the Court cannot know.  Compare A.R. p. 3 with A.R. p. 147.  In

24   this manner, the record is, again, incomplete.  Nevertheless, the Court will analyze the Trust's

25   denial of benefits with respect to each eligibility rule in turn.

26

27

28   _____
     [2] The Trust has not submitted the master plan document, so the Court's review is necessarily
     limited only to the summary documents available to it.

United States District Court
Northern District of California

### 1.      Eligibility Rule Two

Each of the plan's eligibility rules must be satisfied for a claimant to be entitled to RSP benefits.  Guide rev. 1-08 p. 1 ("if you meet *all* of the following eligibility rules") (original emphasis).  In denying benefits on appeal, the Board of Trustees wrote that Verducci did not satisfy "Rule #2 which requires that you had to qualify for a pension when you *withdrew from active employment*."  A.R. p. 1 (emphasis added).  In denying Verducci's initial application, the plan wrote, with respect to Rule Two, "you did not qualify for a pension at the time that you left active employment."  A.R. p. 13.  But Rule Two does not require that the claimant be a pensioner at the time of withdrawal from active employment, nor does it require that the claimant "qualify for a pension" at that time.  Instead, the rules require only that a claimant be receiving a pension *at the time he requests the payment of benefits*; Rule Two states, "You *are* a pensioner with the Western Conference of Teamsters Pension Plan (or another plan approved by TBT) or a recipient of Social Security disability benefits."  Guide rev. 1-08 p. 2 (emphasis added).

At the time of application, Verducci stated, and the plan did not dispute, that he was receiving pension benefits through the Western Conference of Teamsters Pension Plan.  See, e.g., A.R. pp. 1 ("You withdrew 7-04, but your pension date was not effective until 4-08."), 13 ("the effective date of your pension was April 2008"), 15 ("I have been collecting my Local 921 and Western Conference of Teamsters retirement pensions for approximately 2-1/2 years now . . ."), 20 ("The Appellant's letter states he . . . has been collecting his WCT and Local 921 pensions since 2008").  Consequently, there appears to be no basis for the conclusion that Verducci did not meet the requirements of Rule Two, since he was "a pensioner with the Western Conference of Teamsters Pension Plan."  On any standard of review, the Trust's conclusion regarding this rule was therefore erroneous.

### 2.      Eligibility Rule Three

Rule Three states in its entirety:

8

> You were covered under TBT Plan I, I-85, I-A, III, III-A, III-NEWS, IV, V, V-A, VI, or A (or other plans approved by TBT) for at least 24 out of the 36 months immediately preceding your retirement date. For purposes of this eligibility requirement, 'coverage' includes active coverage under any predecessor plan that merged into TBT or months during which you self-pay for coverage in your active employee plan.

Guide rev. 1-08 p. 2. The Trust concluded that Verducci violated this rule because he retired in April 2008 and he not covered by any approved plan for at least 24 out of the 36 months immediately preceding his retirement dated.

The RSP defines "retirement date" as follows: "The date your retirement is effective (your 'retirement date') as determined by the Western Conference of Teamsters Pension Plan (or another pension plan approved by TBT)". Guide rev. 1-08 p. 1. Here, although neither Trust Fund Manager Nora Johnson nor the Board of Trustees made a specific, explicit finding regarding Verducci's retirement date, the only reasonable construction of their written determinations is that they concluded that his retirement date was April 2008. That construction of "retirement date" was reasonable under any standard of review and Verducci does not challenge it in response to this motion. Verducci also does not contest that he was not covered by any approved plan for at least 24 out of the 36 months before his retirement date.

The Trust's determination that Verducci did not comply with Rule Three was a sufficient basis for the Trust to deny his application for RSP benefits.

### 3. Eligibility Rule Five

Rule Five states in its entirety:

> You must submit an application for RSP enrollment (with a copy of your Social Security or pension entitlement documentation) within 12 months from when you first become eligible for TBT retiree benefits. (If you do not enroll within this 12-month period, except as noted under *Exceptions* on this page, you are not permitted to enroll at a future date.)

Guide rev. 1-08 p. 2. Here, Verducci does not dispute that he failed to submit an application within 12 months of the date that he became eligible for TBT retiree benefits. This by itself was a sufficient basis for the Trust to deny his application for RSP benefits.

9

#### 4.    Plaintiff's Additional Arguments

Verducci argues in opposition to the motion that he did not "terminate" his employment, and that did not receive the RSP Summary Plan Description at the time he ceased active employment.  Opp. p. 2.  It is unnecessary for the Court to reach these arguments, because they do not affect the Trust's entitlement to summary judgment for reasons related to Verducci's retirement date, as set forth above.

## IV.    CONCLUSION

Because each of the plan's eligibility rules must be satisfied for a claimant to be entitled to RSP benefits, and because the Trust was entitled to conclude that Plaintiff failed to comply with Rules Three and Five, the Court hereby GRANTS Defendant's motion for summary judgment as to Plaintiff's complaint.  Judgment will be entered in favor of Defendant.

**IT IS SO ORDERED.**

Dated:  November 10, 2013



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California